# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KURT WILSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY, GEORGE PAZ, MAURA C. BREEN, WILLIAM J. DELANEY, ELDER GRANGER, NICHOLAS J. LAHOWCHIC, KATHLEEN M. MAZZARELLA, THOMAS P. MAC MAHON, FRANK MERGENTHALER, WOODROW A. MYERS JR., RODERICK A. PALMORE, WILLIAM L. ROPER, SEYMOUR STERNBERG, TIMOTHY WENTWORTH, CIGNA CORPORATION, HALFMOON PARENT, INC., HALFMOON I, INC., AND HALFMOON II, INC.,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on March 8, 2018 (the "Proposed Transaction"), pursuant to which Express Scripts Holding Company ("Express Scripts" or the "Company") will be acquired by Cigna Corporation ("Parent"), Halfmoon Parent, Inc. ("Holdco"), Halfmoon I, Inc. ("Merger Sub I"), and Halfmoon II, Inc. ("Merger Sub II," and together with Parent and Merger Sub I, "Cigna").

2. On March 8, 2018, Express Scripts' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Cigna. Pursuant to the terms of the Merger Agreement, shareholders of Express Scripts will receive $48.75 in cash and 0.2434 shares of Holdco stock for each Express Scripts share they own.

3. On June 20, 2018, defendants filed a registration statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES AND RELEVANT ENTITIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Express Scripts common stock.

9. Defendant Express Scripts is a Delaware corporation and maintains its headquarters at One Express Way, St. Louis, Missouri 63121. Express Scripts' common stock is traded on the NASDAQGS under the ticker symbol "ESRX."

10. Defendant George Paz ("Paz") is Chairman of the Board of Express Scripts.

11. Defendant Maura C. Breen ("Breen") is a director of Express Scripts.

12. Defendant William J. DeLaney ("DeLaney") is a director of Express Scripts.

13. Defendant Elder Granger ("Granger") is a director of Express Scripts.

14. Defendant Nicholas J. LaHowchic ("LaHowchic") is a director of Express Scripts.

15. Defendant Kathleen M. Mazzarella ("Mazzarella") is a director of Express Scripts.

16. Defendant Thomas P. Mac Mahon ("Mac Mahon") is a director of Express Scripts.

17. Defendant Frank Mergenthaler ("Mergenthaler") is a director of Express Scripts.

18. Defendant Woodrow A. Myers Jr. ("Myers") is a director of Express Scripts.

19. Defendant Roderick A. Palmore ("Palmore") is a director of Express Scripts.

20. Defendant William L. Roper ("Roper") is a director of Express Scripts.

21. Defendant Seymour Sternberg ("Sternberg") is a director of Express Scripts.

22. Defendant Timothy Wentworth ("Wentworth") is a director of Express Scripts.

23. The defendants identified in paragraphs 10 through 22 are collectively referred to herein as the "Individual Defendants."

24. Non-party Parent is Delaware corporation and a party to the Merger Agreement.

25. Non-party Holdco is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

26. Non-party Merger Sub I is a Delaware corporation, a wholly-owned subsidiary of Holdco, and a party to the Merger Agreement.

27. Non-party Merger Sub II is a Delaware corporation, a wholly-owned subsidiary of Holdco, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Express Scripts (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

29. This action is properly maintainable as a class action.

30. The Class is so numerous that joinder of all members is impracticable. As of March 7, 2018, there were approximately 561,236,845 shares of Express Scripts common stock outstanding.

31. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

32. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the

Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

33. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

34. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

35. Express Scripts puts medicine within reach of tens of millions of people by aligning with plan sponsors, taking bold action, and delivering patient-centered care to make better health more affordable and accessible.

36. The Company provides integrated pharmacy benefit management services, including network-pharmacy claims processing, home delivery pharmacy care, specialty pharmacy care, specialty benefit management, benefit-design consultation, drug utilization review, formulary management, and medical and drug data analysis services.

37. Express Scripts also distributes a full range of biopharmaceutical products and provides extensive cost-management and patient-care services.

38. On March 8, 2018, the Individual Defendants caused the Company to enter into

the Merger Agreement with Cigna.

39.     Pursuant to the terms of the Merger Agreement, shareholders of Express Scripts will receive $48.75 in cash and 0.2434 shares of Holdco stock for each Express Scripts share they own.

40.     According to the press release announcing the Proposed Transaction:

Cigna Corporation (NYSE: CI) and Express Scripts Holding Company (NASDAQ: ESRX) today announced that they have entered into a definitive agreement whereby Cigna will acquire Express Scripts in a cash and stock transaction valued at approximately $67 billion, including Cigna's assumption of approximately $15 billion in Express Scripts debt. The merger consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share. The transaction was approved by the board of directors of each company. . . .

Terms of the Agreement

Under the terms of the definitive agreement, the transaction consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share, or $54 billion in the aggregate. Upon closing of the transaction, Cigna shareholders will own approximately 64% of the combined company and Express Scripts shareholders will own approximately 36%. The consideration represents an approximately 31% premium to Express Scripts' closing price of $73.42 on March 7, 2018.

Upon closing, the combined company will be led by David M. Cordani as President and CEO. Tim Wentworth will assume the role of President, Express Scripts. The combined company's board will be expanded to 13 directors, including four independent members of the Express Scripts board.

The combined company will be named Cigna. Cigna's headquarters in Bloomfield, Connecticut, will become the headquarters for the combined company, and Express Scripts will be headquartered in St. Louis, Missouri. At closing, the combined company will make an incremental investment of $200 million in its charitable foundation, to support the communities in which it operates, and with the continued focus on improving societal health.

Financing, Closing and Approvals

Cigna intends to fund the cash portion of the transaction consideration through a combination of cash on hand, assumed Express Scripts debt and new debt issuance and Cigna has obtained fully committed debt financing from Morgan

Stanley Senior Funding, Inc. and The Bank of Tokyo-Mitsubishi UFJ, Ltd. The transaction is not subject to a financing condition. Upon completion of the transaction, Cigna is expected to have debt of approximately $41.1 billion. Cigna expects to have a debt-to-capitalization ratio of approximately 49% following the acquisition, and aims to achieve a ratio in the 30's within 18 to 24 months after the transaction closes. Cigna expects to maintain its investment grade ratings.

The transaction, which is expected to be completed by December 31, 2018, is subject to the approval of Cigna and Express Scripts shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals. Until the closing, Cigna and Express Scripts will continue to operate as independent companies.

**The Registration Statement Omits Material Information**

41. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

42. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

43. First, the Registration Statement omits material information regarding the Company's and Cigna's financial projections and the analyses performed by the Company's financial advisors, Centerview Partners LLC ("Centerview") and Lazard Frères & Co. LLC ("Lazard").

44. With respect to the Company's financial projections, the Registration Statement fails to disclose: (i) all projection line items for years 2023 through 2027; (ii) all line items used to calculate unlevered free cash flow; (iii) all line items used to calculate Adjusted EBITDA and Core EBITDA; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

45. With respect to Cigna's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) all line items used to calculate EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

46. With respect to Centerview's Discounted Cash Flow Analyses, the Registration

Statement fails to disclose: (i) the specific inputs and assumptions underlying the ranges of discount rates and the perpetuity growth rates used and applied by Centerview in its analyses; (ii) the Company's and Cigna's net debt; (iii) the ranges of illustrative terminal values for Express Scripts and Cigna; and (iv) the number of fully-diluted outstanding shares of Express Scripts and Cigna common stock.

47.    With respect to Centerview's Selected Trading Company Analyses, the Registration Statement fails to disclose: (i) the financial metrics for the companies observed by Centerview in its analyses; and (ii) the Company's and Cigna's net debt.

48.    With respect to Centerview's Selected Precedent Transaction Analysis, the Registration Statement fails to disclose the Company's net debt.

49.    With respect to Centerview's Premia Paid Analysis, the Registration Statement fails to disclose the transactions observed by Centerview in its analysis as well as the premiums paid in such transactions.

50.    With respect to Lazard's Discounted Cash Flow Analyses, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the ranges of discount rates and perpetuity growth rates used and applied by Lazard in its analyses; and (ii) the ranges of estimated terminal values for Express Scripts and Cigna.

51.    With respect to Lazard's Selected Public Companies Analyses, the Registration Statement fails to disclose the financial metrics for the companies observed by Lazard in its analyses.

52.    With respect to Lazard's illustrative value creation analysis, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate used by Lazard in its analysis; and (ii) pro forma net debt for the combined company.

53. With respect to Lazard's illustrative premia paid analysis, the Registration Statement fails to disclose the transactions observed by Lazard in its analysis as well as the premiums paid in such transactions.

54. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

55. Second, the Registration Statement omits material information regarding potential conflicts of interest of Lazard.

56. The Registration Statement fails to disclose the amount of compensation Lazard has received for the past services it provided to the Company and its affiliates.

57. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

58. Third, the Registration Statement fails to disclose whether the Company executed any confidentiality agreements that contained "don't ask, don't waive" provisions that prevented the counterparties from requesting waivers of standstill provisions to submit superior offers to acquire the Company, as well as whether any parties that executed confidentiality agreements are still subject to standstill provisions.

59. Without this information, stockholders may have the mistaken belief that, if these

potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

60. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Mergers; (ii) Recommendation of the Express Scripts Board of Directors; Express Scripts' Reasons for the Mergers; (iii) Opinions of Financial Advisors to Express Scripts; and (iv) Certain Financial Forecasts.

61. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Express Scripts**

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Express Scripts is liable as the issuer of these statements.

64. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

65. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

66. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement.

67. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

68. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

69. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Cigna

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants and Cigna acted as controlling persons of Express Scripts within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Express Scripts and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

72. Each of the Individual Defendants and Cigna was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

73. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

74. Cigna also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

75. By virtue of the foregoing, the Individual Defendants and Cigna violated Section 20(a) of the 1934 Act.

76. As set forth above, the Individual Defendants and Cigna had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

12

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 29, 2018        **RIGRODSKY & LONG, P.A.**

              By: */s/ Brian D. Long*
                 Brian D. Long (#4347)
**OF COUNSEL:**          Gina M. Serra (#5387)
                 300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**          Wilmington, DE 19801
Richard A. Maniskas        Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300    Facsimile: (302) 654-7530
Berwyn, PA 19312         Email: bdl@rl-legal.com
Telephone: (484) 324-6800      Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com       *Attorneys for Plaintiff*